

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN , 11

GROVER SELLERS

ATTORNEY GENERAL

Honorable I. C. McWhirter
County Auditor
Hunt County
Greenville, Texas

Dear Sir:

Opinion No. O-5460
Re: May the Commissioners'
Court sell road machinery
purchased and paid for out
of proceeds of a road bond
issue of Justice Precinct
and may the Court purchase
said machinery for and in
behalf of a Commissioners'
Precinct of the same county?
And related questions

We are in receipt of your letter of recent date,
reading in part as follows:

"The County Judge and Commissioners have
a problem which they have requested me to sub-
mit to you for solution.

"It seems conceded that the following are
the facts as nearly as I am able to ascertain.

"The Wolfe City Justice Precinct No. 5 in
this county held an election to determine as to
whether or not they would issue one hundred and
twenty five thousand ($125,000) dollars worth
of bonds to be used in conjunction with a P. W.
A. Project in building lateral hard surfaced
roads in Justice Precinct No. 5, which election
carried and the bonds were issued and sold and
some several miles of such roads were constructed;
that it was necessary to purchase certain road

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

machinery and equipment in order to do the work undertaken, that such machinery in due course was pruchased by the Commissioner's Court with the advice, consent and assistance of a self appointed citizen's committee of Justice Precinct No. 5; and paid for out of the money obtained from a sale of the bonds; that the work has now ceased, at least for the duration, because of the failure of the W. P. A. to operate, or because of the discontinuance of the W. P. A. Projects.

"The equipment purchased and paid for by the Wolfe City Justice Precinct No. 5 to do this work is very fine motorized equipment that cost many thousands of dollars, and consists of One J. D. Adams Motor Grader cost $5895.80, One International Truck cost $1200.00, and one Ford Truck cost $1327.60 at a total cost of $8,423.40, and is now in good condition but if permitted to stand idle, without use and attendant care which it would have if being used, will deteriorate and lose value very rapidly. . . . ."

In reply to our request for additional information, you advised us that the machinery in question is to be used in the Commissioners' precinct as road equipment for Hunt County.

Your questions may be stated as follows:

1. Can the Commissioners' Court, the governing body of Justice Precinct No. 5 (as a political subdivision authorized to issue road bonds) sell road machinery and equipment used in building roads in said precinct No. 5 with the acquiescence and consent of the Citizens' Committee?

2. If the Commissioners' Court can sell said machinery and equipment, can they sell it to a Commissioners' Precinct of the County?

3. If the Commissioners' Court can sell the equipment, is it necessary for the sale to be advertised the same as the sale of any other property belonging to the county?

We will first answer your second question.

Justice Precinct No. 5, a political subdivision of Hunt County, appears to have accepted the provisions of Chapter 3, Title 22, Vernon's Annotated Civil Statutes, voted bonds for the purposes set forth in said chapter, sold them, and with part of the proceeds purchased the described road machinery and equipment, which it now wishes to sell to the county, for use upon its public roads in one or more of its Commissioners' Precincts, or to anyone who may wish to purchase same.

The Commissioners' Court of Hunt County is not only the governing body of Hunt County, which, of course, includes all of its Commissioners' Precincts, but of Justice Precinct No. 5, a body corporate. As such governing body, it bought the machinery for the precinct and, if the same is sold, the sale can be made only by said court. Should the sale be made to the county or to the Commissioners' Precinct the same court must act for the county or Commissioners' Precinct in making the purchase. In such an event, it is the duty of said court to purchase the machinery at the lowest possible price. Such is the established policy of the State as evidenced by Article 1659, Revised Statutes, requiring supplies of every kind for use of the county to be purchased on competitive bids. Likewise, it is the duty of said court to obtain the best possible price for the machinery it sells for the precinct. Therefore, the Commissioners' Court is placed in the anomolus position of being the agent of both the seller and the purchaser. It is our opinion that such a sale would be contrary to public policy and may not be legally made.

In answer to your first and third questions, you are advised that it is our opinion that the Commissioners' Court of

Hunt County has the implied authority to dispose of the machinery and equipment described in your letter by sale. It is our further opinion that the machinery and equipment may be sold either at public or private sale, with or without advertisement, and with or without the consent of the Citizens Committee, a committee which has no official status. See Limestone County v. Garrett et al., 236 S. W. 970.

Trusting that the foregoing sufficiently answers your questions, we are

Very truly yours

APPROVED SEPT. 28, 1943

ATTORNEY GENERAL OF TEXAS

/s/ Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

By

/s/ C. F. Gibson
Assistant

CFG-s
pw

APPROVED OPINION COMMITTEE BY B.W.B. CHAIRMAN